WEBSTER, Judge.
In this workers’ compensation case, the self-insured employer seeks review of an order which awarded benefits to appellees pursuant to section 440.16, Florida Statutes (1989), on account of the tragic death of Valerie Dwight (wife and mother, respectively, of appellees) in an auto accident. We conclude that, in part, the order is based upon an erroneous application of law; and that, in part, the order is not supported by competent, substantial evidence. Accordingly, we are constrained to reverse.
The evidence established the following. On June 8, 1990, Valerie Dwight was employed as a secretary in the City of Miami Fire Department. The Department was divided into seven divisions. Ms. Dwight was secretary to Deputy Chief Floyd Jordan, in the operations division. Willie Waters was Chief of the management services division, and Veldora Arthur was an assistant personnel officer in the management services division. Ms. Dwight, Deputy Chief Jordan, Chief Waters and Ms. Arthur all worked in the same building in downtown Miami. However, neither Chief Waters nor Ms. Arthur had any supervisory responsibility as to Ms. Dwight.
Shortly before noon on that day, Chief Waters and Ms. Arthur asked Deputy Chief Jordan and Ms. Dwight if they would like to join them for lunch. Both Deputy Chief Jordan and Ms. Dwight agreed. However, Deputy Chief Jordan had “some business” to take care of, and told the others that he would meet them at the restaurant. There was no particular reason why Chief Waters and Ms. Arthur asked Ms. Dwight to accompany them on that day, other than social. While Ms. Dwight had gone to lunch with Chief Waters and Ms. Arthur in the past, such occasions had been infrequent. As with lunches attended by co-workers generally, topics of conversation related to the Fire Department occasionally came up during lunches of this type which had been attended by Chief Waters and Ms. Arthur. However, neither Chief Waters nor Ms. Arthur considered such lunches to be “working lunches.” Each person paid for his or her lunch on such occasions. Ms. Dwight was permitted one hour as a lunch period. She was not paid for such time, and was free to go anywhere she might desire.
Chief Waters, Ms. Arthur and Ms. Dwight left the building together and got into Chief Waters’ personal auto (for which he received an allowance from the Fire Department). They had driven approximately three blocks when the tragic accident occurred which resulted in Ms. Dwight’s death.
The judge of compensation claims based his decision to award benefits upon the following reasoning:
[T]he period allotted for lunch was a condoned off-premises break, which in itself did not constitute such a deviation as to remove a worker from the scope of the employment, particularly as some work discussions would be carried out.... [E]ven if such were not the case, this particular lunch meeting involved a combination of business and social activity, professional in nature.
As the recitation of the relevant facts reveals, there was no evidence whatsoever to support a finding that the lunch to which Ms. Dwight was on her way at the time of the accident had any business purpose whatsoever. Rather, all of the evidence was to the effect that the lunch was to be purely social, and not motivated in any way by any business purpose. Similarly, there was no evidence to support a finding that the parties intended *983 that “some work discussions would be carried out.” At best, the evidence established that, at times during past lunches attended by Chief Waters and Ms. Arthur, topics of conversation had included work-related matters, just as is invariably the case whenever coworkers gather socially. Accordingly, there is no evidentiary support for the critical factual findings made by the judge of compensation claims. Moreover, the judge of compensation claims applied an incorrect legal analysis when he treated the lunch hour as nothing more than an “off-premises break, which in itself did not constitute such a deviation as to remove a worker from the scope of the employment.”
The leading commentator on the law of workers’ compensation has explained the rule regarding compensability of injuries incurred while going to or coming from lunch as follows:
[W]hen the employee has a definite place and time of work, and the time of work does not include the lunch hour, the trip away from and back to the premises for the purpose of getting lunch is indistinguishable in principle from the trip at the beginning and end of the work day, and should be governed by the same rules and exceptions. This approach aids in achieving consistency in this field....
The basic rule, then, is that the journey to and from meals, on the premises of the employer, is in the course of employment. Conversely, when the employee with fixed time and place of work has left the premises for lunch, he is outside of the course of his employment if he falls, is struck by an automobile crossing the street, or is otherwise injured. But the same exceptions apply here as in other going and coming cases....
1 Arthur Larson, The Law of Workmen’s Compensation § 15.51, at 4-157 to 4-169 (1993). Professor Larson distinguishes between “lunch periods” and “breaks” thus:
The going and coming rule has so far been treated as substantially identical whether the trip involves the lunch period or the beginning and end of the work day. This can be justified because normally the duration of the lunch period, when lunch is taken off the premises, is so substantial and the employee’s freedom of movement so complete that the obligations and controls of employment can justifiably be said to be in suspension during this interval.
Now that the coffee break or rest break has become a fixture of many kinds of employment, close questions continue to arise on the compensability of injuries occurring off the premises during rest periods or coffee breaks of various durations and subject to various conditions. It is clear that one cannot announce an all-purpose “coffee break rule,” since there are too many variables that could affect the result. The duration might be five minutes, seven minutes, 10 minutes, or even 20 minutes by which time it is not far from that of a half-hour lunch period. Other variables may involve the question whether the interval is a right fixed by the employment contract, whether it is a paid interval, whether there are restrictions on where the employee can go during the break, and whether the employee’s activity during this period constituted a substantial personal deviation.
The operative principle which should be used to draw the line here is this: If the employer, in all the circumstances, including duration, shortness of the off-premises distance, and limitations on off-premises activity during the interval can be deemed to have retained authority over the employee, the off-premises injury may be found to be within the course of employment.
Id. § 15.54, at 4-183 to 4-185. These distinctions between treatment of “lunch periods” and “breaks” have been followed in Florida. Compare Doctor’s Business Service, Inc. v. Clark, 498 So.2d 659 (Fla. 1st DCA 1986) (citing with approval Larson analysis of com-pensability of injuries incurred going to or coming from off-premises lunch), review denied, 506 So.2d 1041 (Fla.1987) with Holly Hill Fruit Products, Inc. v. Krider, 473 So.2d 829, 830 (Fla. 1st DCA 1985) (“An employer-condoned off-premises refreshment break of insubstantial duration is generally not such a deviation as to remove a claimant *984 from the course and scope of the employment”).
Clearly, the one-hour unpaid lunch period upon which Ms. Dwight set out was not what either Larson or this court would consider a “refreshment break of insubstantial duration.” Accordingly, the judge of compensation claims should have applied the analysis applicable to off-premises lunches, rather than the analysis applicable to “refreshment breaks.”
Applying the proper legal analysis, we conclude that there is no evidence from which one might conclude that any exception to the general going and coming rule (see Larson, supra, § 15.52, at 4-169 to 4-180) is applicable, so to make Ms. Dwight’s tragic death compensable. Accordingly, no purpose would be served by remanding to the judge of compensation claims for further proceedings applying the correct legal analysis. Because Ms. Dwight’s death did not occur in the course and scope of her employment, it was error to award benefits to appellees. Therefore, we reverse.
REVERSED.
ALLEN and LAWRENCE, JJ., concur.